# United States Court of Appeals

## For the First Circuit

---

No. 03-2428

DAVID A. CARCAMO-RECINOS,

Petitioner,

v.

JOHN ASHCROFT, UNITED STATES ATTORNEY GENERAL,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella and Howard, Circuit Judges,

DiClerico,* District Judge.

---

Rebecca O'Brien Radford with whom Goulston & Storrs was on brief, for petitioner.
Jonathan F. Potter with whom Peter D. Keisler, Assistant Attorney General, Civil Division, Michael P. Lindemann, Assistant Director, Office of Immigration Litigation and Douglas E. Ginsburg, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, were on brief, for respondent.

---

November 23, 2004

---

*Of the District of New Hampshire, sitting by designation.

**HOWARD**, **Circuit Judge**.  David Carcamo-Recinos, a native of Guatemala, petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ's") denial of his request for asylum and withholding of removal.  The pertinent background  follows.

On May 22, 1998, the Immigration and Naturalization Service[1] ("INS") issued a Notice to Appear to Carcamo, alleging that he was an alien removable for staying beyond the term of his visitor's visa.  See 8 U.S.C. § 1227(a)(1)(B).  Carcamo admitted that he was removable, but he sought asylum and withholding of removal on the ground that he had been persecuted because of his political views.  At his hearing, Carcamo presented documentary evidence, his own testimony, and the testimony of an expert witness.  We summarize this evidence, noting ambiguities or inconsistencies where necessary and reserving detailed discussion of some facts for our analysis.

Carcamo served as mayor of the town of Jalapa, Guatemala from January 16, 1991 to January 16, 1996.  He was elected as a member of the Union de Centro National (National Center Union) party ("UCN"), and he advanced a platform of tax reform (which included collecting delinquent taxes), providing services to the poor, and promoting greater financial autonomy for municipalities.

---

[1] The relevant functions of the INS were transferred to the Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement in March 2003. Because the relevant events took place prior to the reorganization, we continue to refer to the INS.

In April 1993, Carcamo began a one-year term as president of the National Association of Mayors (Spanish acronym "ANAM"), an organization that represents the interests of Guatemalan mayors and seeks increased municipal autonomy from the central government. The presidency of ANAM provided Carcamo with greater notoriety and media attention and enabled him to advance his reforms.

Carcamo maintained that his actions as a nationally renowned crusader for controversial reforms brought him into conflict with powerful economic interests, including businesses and large landowners, that sought to preserve the status quo by ruthlessly persecuting political enemies. Carcamo asserted that these entities are so influential with the national government, the army, and the national police that they operate outside the law and government control. Carcamo noted that the previous mayor and deputy[2] for the Department of Jalapa[3] had been murdered in 1990.

Carcamo testified that he received a written threat in April 1991, which stated that he would be killed because he "was pursuing things in politics that [he] should not do." He explained that he destroyed the note because he was afraid; however, in his asylum application, Carcamo stated that he destroyed it because he did not take it seriously. Carcamo also testified to receiving frequent telephonic death threats at his home and office.

---

[2] Carcamo states that this deputy position is roughly equivalent to a member of Congress or a senator in our system.

[3] The Department of Jalapa is the large area around the city of Jalapa that is roughly equivalent to a congressional district or state in the United States.

Generally, the threats stated that he would be killed because he "was into things that [he] should not be in." The frequency of the threats peaked during his tenure as ANAM president in 1993-94. In his asylum application, Carcamo indicated that the threats were of two types: (1) threats related to political activity; and (2) threats based on the perception that he was wealthy and therefore worth kidnaping.

During this same period, Carcamo's wife and bodyguard[4] reported that armed men passed his home on approximately four occasions. Carcamo also testified to another encounter with armed men during a trip to Guatemala City with the town treasurer in 1994. On the return trip, the two (who had traveled in separate vehicles) switched cars. While en route back to Jalapa, a red car full of armed men pulled alongside the treasurer's car. One man then pointed a machine gun out the window. No shots were fired, and the red car sped away. Carcamo maintained that the individuals aborted their attack when they realized that he was not in the car. Carcamo did not recount this incident in his asylum application.

Carcamo never reported the threats to the national or local police, because he believed that they were corrupt and possibly in league with the individuals threatening him, and because other politicians who had reported threats to the police were killed anyway. He did, however, report the threats to

---

[4] As mayor, Carcamo was assigned a bodyguard at government expense.

Guatemala's Human Rights Procurator, who investigated the case and concluded that the danger to Carcamo was real.[5]

While mayor, Carcamo made approximately fifteen official trips abroad, including several to the United States. He always returned to Guatemala and his mayoral duties at the conclusion of these trips.

In 1995, Carcamo sought national office as deputy for the Department of Jalapa, but was defeated in the election. He left the office of mayor on January 16, 1996. After leaving public life, Carcamo moved to the southern coast of Guatemala and turned to dairy farming. At first, he felt safe in his new location. However, in August 1996 or February 1997, his cousin informed him that he had heard that Carcamo was on a kidnaping/assassination list. Carcamo testified that another individual on the same list had been kidnaped. In his asylum application, Carcamo stated that he believed kidnaping meant certain death for him because he did not have enough money to satisfy a ransom demand.

After this incident, Carcamo decided to leave Guatemala for the United States. He arrived in the United States on March 18, 1997. He maintains that because of his notoriety, there is no place in Guatemala where he can live safely.

Professor Clark E. Taylor, Carcamo's expert on conditions in Guatemala, testified that Carcamo would be a marked man if he returned to Guatemala because of his efforts at political reform.

---

[5] The procurator is a human rights ombudsperson who can investigate and report human rights abuses but lacks law enforcement power.

He also testified that crusading politicians were at great risk from various reactionary forces in Guatemalan society, including large landowners, and that these forces act with impunity because of their close ties to the central government and the corrupt national police. Professor Taylor stated that the government and police are unwilling or unable to protect individuals such as Carcamo, many of whom continue to seek reform despite the risk to themselves. Professor Taylor also testified to rampant lawlessness in Guatemala and to the regularity of political assassinations there.

The IJ denied relief, concluding that Carcamo had failed to prove either that the threats that he endured constituted persecution or that Carcamo harbored a reasonable fear of future persecution. As to past persecution, the IJ was persuaded by the facts that Carcamo was never harmed or directly confronted, maintained an active political career, traveled abroad and returned on numerous occasions, and did not establish a likely source of the threats. As to a fear of future persecution, the IJ emphasized Carcamo's travel abroad and that he and his family were never harmed. The BIA summarily affirmed the IJ's decision.

This court reviews BIA decisions under the deferential "substantial evidence" standard. Mihaylov v. Ashcroft, 379 F.3d 15, 17 (1st Cir. 2004). The BIA's decision will be upheld "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." Khalil v. Ashcroft, 337 F.3d 50, 55 (1st Cir. 2003)(internal quote omitted). "To reverse the BIA

-6-

finding we must find that the evidence not only supports that conclusion, but compels it ...." INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992)(emphases in original); see also Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003)("Merely identifying alternative findings that could be supported by substantial evidence is insufficient to supplant the BIA's findings."). In contrast, questions of law are reviewed de novo. Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004).

Where the BIA summarily affirms the IJ's decision, this court reviews the IJ's decision. Id.; Samayoa Cabrera v. Ashcroft, 367 F.3d 10, 13 (1st Cir. 2004).

Carcamo argues that the IJ made the following errors: (1) he improperly required Carcamo to show that the government was his persecutor; (2) he improperly required Carcamo to specifically identify his persecutors; (3) he improperly determined that Carcamo's willingness to risk his life foreclosed a finding of a well-founded fear of persecution; (4) he improperly disregarded Carcamo's credible testimony that his fear was genuine; and (5) he improperly disregarded corroborating evidence that Carcamo's fear was objectively reasonable.

We begin our analysis by focusing on Carcamo's entitlement to asylum, because Carcamo cannot establish an entitlement to withholding of removal if he is ineligible for asylum. See Nelson v. INS, 232 F.3d 258, 261 n.2 (1st Cir. 2000). The alien bears the burden of establishing eligibility for asylum

by showing that he qualifies as a "refugee." <u>Afful</u> v. <u>Ashcroft</u>, 380 F.3d 1,3 (1st Cir. 2004).

> The term 'refugee' means (A) any person who is outside any country of such person's nationality...and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion ....

8 U.S.C. §1101(a)(42)(A). A petitioner can show that he is a refugee entitled to asylum in one of two ways: (1) demonstrating past persecution, which creates a presumption of a well-founded fear of persecution (which the government may rebut); or (2) demonstrating a well-founded fear of future persecution. <u>El Moraghy</u> v. <u>Ashcroft</u>, 331 F.3d 195, 202 (1st Cir. 2003).

"To prove past persecution, an applicant must provide 'conclusive evidence' that he has suffered persecution on one of the five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion." <u>Romilus</u>, 385 F.3d at 6. To demonstrate a well-founded fear of future persecution, the applicant must prove that his fear is both genuine and objectively reasonable. <u>See</u> <u>El Moraghy</u>, 331 F.3d at 203. The applicant's testimony may be sufficient to demonstrate the objective reasonableness of his fear, "but [the testimony] must constitute credible and specific evidence of a reasonable fear of persecution." <u>Afful</u>, 380 F.3d at 3.

Carcamo's first two arguments seek to undermine the IJ's determination that Carcamo did not suffer past persecution. But

-8-

these arguments only address one aspect of the IJ's reasoning: that the evidence did not establish the likely source of the threats and thus failed to establish that they were motivated by one of the five statutorily-protected grounds. See Romilus, 385 F.3d at 6. In other words, Carcamo has failed to question the IJ's independent determination that the harassment he suffered does not rise to the level of "persecution" within the meaning of our asylum laws. Accordingly, Carcamo cannot prevail in his effort to secure a presumption of likely future persecution because he previously has been persecuted. Cf. In re Public Serv. Co. of N.H., 879 F.2d 987, 989-90 (1st Cir. 1989) (per curiam) (affirming because appellant failed to challenge one of two alternative bases for the lower court's decision). We consequently confine our focus to Carcamo's arguments in support of his claim that the IJ erred in concluding that he lacked a well-founded fear of future persecution. But in doing so, we note in passing that the IJ's unchallenged determination that the threats Carcamo suffered did not amount to persecution appears to us to have been within his wide discretion. See Elias-Zacarias, 502 U.S. at 481 n.1 (emphasizing the high degree of deference to be accorded administrative factual findings in immigration cases); Nelson, 232 F.3d at 263 ("To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering.").

Carcamo does not really argue that the administrative record lacks substantial evidence to support the IJ's future-persecution finding. Nor could he. After all, there is evidence

that Carcamo willingly returned to Guatemala on several occasions during the time period when he was being threatened, see, e.g., Albathani, 318 F.3d at 373; Aguilar-Solis v. INS, 168 F.3d 565, 574 n.7 (1st Cir. 1999); that Carcamo remained in Guatemala for more than two years after the alleged persecution peaked, see Ravindran v. INS, 976 F.2d 754, 760 (1st Cir. 1992);[6] and that Carcamo's family has not suffered persecution since he left Guatemala, see Romilus, 385 F.3d at 8; Aguilar-Solis, 168 F.3d at 573; Ravindran, 976 F.2d at 759-60.[7] Rather, as we understand his argument, Carcamo contends that the IJ's future-persecution finding is tainted by two related errors of law: (1) an erroneous belief that an individual who is brave enough to risk his life by returning to his homeland in the face of prior persecution cannot establish a

---

[6] True, Carcamo allegedly learned that he was on a kidnaping list shortly before he left the country in 1997. But this evidence does not compel a finding in Carcamo's favor. Carcamo's cousin, who allegedly told Carcamo about the list, never saw it himself. Moreover, Carcamo presented no evidence of who created the list, when the list was created, or when his name was added to it. Perhaps more importantly, Carcamo presented no evidence that he was added to the list on account of his political opinions. Indeed, Carcamo's conclusory testimony that he was on the list because of his political opinions was undermined by his statement, in his asylum application, that he feared being on the list because he would be unable to pay a ransom if he were to be kidnaped. This statement tends to suggest that the alleged would-be kidnapers were motivated by the prospect of economic gain and not Carcamo's political beliefs.

[7] Carcamo's expert testified that a mayor who had angered well-connected persecutors "would be in more jeopardy" than the mayor's family, but he also admitted that "plenty . . . [of] family members have been harmed" and that, in the case of a particularly high profile politician, the family is a more likely target. Carcamo has repeatedly argued that he was a high profile politician, who was "nationally renowned" as "the face of tax reforms." Pet. Br. at 4, 14.

well-founded fear of future persecution; and (2) a failure to recognize that the testimony of a "generally . . . credible witness" (as the IJ found Carcamo to be) should be credited -- especially when it is corroborated. These errors, Carcamo states, led the IJ to give conclusive weight to the evidence of his travel while mayor and concomitantly to disregard Carcamo's testimony about his fear of assassination were he to return to Guatemala.

We perceive no error of law. The IJ did not, as Carcamo asserts, hold that "only cowards are worthy of asylum." Pet. Br. at 33. As we read the record, the IJ merely considered Carcamo's frequent departures from and returns to Guatemala as a factor in his analysis, as he was permitted to do. See Albathani, 318 F.3d at 373; Aguilar-Solis, 168 F.3d at 574 n.7. Moreover, the finding that Carcamo was "generally . . . credible" does not seem to us to be a finding that Carcamo was credible in all respects. The word "generally" often connotes a significant limitation and, in light of the IJ's other findings, should be so understood here. There is nothing internally inconsistent in crediting Carcamo's testimony about what happened when he was mayor and yet concluding, as the IJ did, that these events did not ground a well-founded fear of future persecution.

For the reasons stated, we **deny** Carcamo's petition for review.

**So ordered.**