**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 03-2485

POLTAK HUTAURUK,

Petitioner,

v.

ALBERTO GONZALES, Attorney General,

Respondent.[*]

---

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Lynch, Lipez, and Howard, <u>Circuit Judges</u>.

---

<u>Steven A. Mundie</u>, on brief for petitioner.
<u>William C. Minick</u>, Attorney, Office of Immigration Litigation,
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, and
<u>Linda S. Wernery</u>, Senior Litigation Counsel, Office of Immigration
Litigation, on brief for respondent.

---

February 18, 2005

---

[*]Alberto Gonzales was sworn in as United States Attorney
General on February 3, 2005. We have therefore substituted Attorney
General Gonzales for John Ashcroft as the respondent. <u>See</u> Fed. R.
Civ. P. 25(d)(1); Fed. R. App. P. 43(c)(2).

**Per Curiam**. Poltak Hutauruk, a native of Indonesia, petitions for review of a Board of Immigration Appeals ("BIA") decision summarily affirming an immigration judge's ("IJ's") denial of his request for asylum. We deny the petition.

On July 13, 2001, the Immigration and Naturalization Service issued to Hutauruk a Notice to Appear, alleging that he was an alien removable for staying beyond the term of his visitor's visa.[1] See 8 U.S.C. § 1227(a)(1)(B). Hutauruk admitted that he was removable but sought asylum on the ground that he had been persecuted because of his religion.[2]

Hutauruk is a Pentecostal Christian and a native Indonesian. His wife and son still live in Indonesia. Hutauruk testified that on May 14, 1998, there were riots in the neighborhood where he worked, an ethnically Chinese area. During these riots, Hutauruk was injured and had to seek medical attention. He testified that the rioters were screaming Muslim religious slogans and that their actions were directed at Christians. After the riots, Hutauruk got a new job and stayed in Indonesia until September 23, 2000, when he traveled to the United

---

[1]The relevant functions of the INS were transferred to the Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement in March 2003. Because the relevant events took place prior to the reorganization, we refer to the INS.

[2]Hutauruk also applied for withholding of removal and protection under the Convention Against Torture, but does not challenge the denials of those applications in his petition.

States. Hutauruk did not report any other incidents during the 28 months that he remained in Indonesia.

Hutauruk also testified that his family has experienced religious violence since he came to the United States. He stated that on December 24, 2000, while his wife, son, and mother-in-law were attending Christmas services, the church they were in was bombed. Though his child was not hurt, Hutauruk's wife was hit in the head with glass, and his mother-in-law injured her knee.

After a hearing before an IJ, Hutauruk's request for asylum was denied. The IJ determined that Hutauruk did not prove either that he had endured persecution or that he had a reasonable fear of future persecution. Regarding past persecution, the IJ concluded that Hutauruk's religion was not a cause of his injuries because the rioting on May 14, 1998 was general rioting and the rioters had no way of knowing that Hutauruk was Christian. Concerning Hutauruk's claim that he will be persecuted if he returns to Indonesia, the IJ determined that the attacks against Christians were not invidious enough to amount to persecution and that the government of Indonesia had not condoned the actions of the "extremists." The BIA summarily affirmed.

When the BIA summarily affirms an IJ's ruling, we review the IJ's decision directly. Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003). We review the IJ's conclusions under the "deferential 'substantial evidence' standard," Carcamo-Recinos v.

-3-

<u>Ashcroft</u>, 389 F.3d 252, 256 (1st Cir. 2004), which requires us to uphold the IJ's decision "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>Khalil</u> v. <u>Ashcroft</u>, 337 F.3d 50, 55 (1st Cir. 2003)(internal quotation mark omitted).  Under this standard, a petitioner must do more than simply identify alternative findings supported by the evidence.  <u>See</u> <u>Albathani</u> v. <u>INS</u>, 318 F.3d 365, 372 (1st Cir. 2003); <u>see also</u> <u>INS</u> v. <u>Elias-Zacarias</u>, 502 U.S. 478, 482 (1992); <u>Aguilar-Solis</u> v. <u>INS</u>, 168 F.3d 565, 569 (1st Cir, 1999).  Rather, the petitioner must show that the evidence is so overwhelming that a reasonable factfinder would have to conclude that he is entitled to asylum.  <u>Elias-Zacarias</u>, 502 U.S. at 482.

Hutauruk's petition, which challenges only the finding as to likely future persecution, relies entirely on a 2002 State Department report on human rights practices in Indonesia submitted by the government in the administrative proceedings.[3]  Hutauruk reads the report to establish conclusively that he would be persecuted were he to return to Indonesia.  But the report does not compel such a conclusion.  Though the report describes instances of religious violence in Indonesia and governmental ineffectiveness in responding to these incidents, it also states that the government

---

[3]The INS contends that Hutauruk's argument regarding the report is not properly before us because he did not base his BIA appeal upon it.  Because the outcome of this proceeding is foreordained under circuit precedent regardless, we shall treat Hutauruk's contention, arguendo, as properly raised on appeal. <u>See</u> <u>Sousa</u> v. <u>INS</u>, 226 F.3d 28, 32 (1st Cir. 2000).

was working with a non-governmental organization to investigate the December 24 bombings, and that there is no evidence "that security forces, as an institution, supported either side." The report further states that Indonesia's religious freedom provisions are "generally respect[ed]," and that perpetrators of some of the December 24 bombings were convicted and given prison sentences. Finally, and in any event, the report does not indicate that religious persecution is so pervasive in Indonesia that Hutauruk could not avoid it by relocating within the country. See 8 C.F.R. 208.13(2)(C)(ii).

We have no basis to disturb the denial of Hutauruk's asylum application. Accordingly, we deny his petition for review.

**So Ordered**