**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 04-1438

MIHALLAQ ZIU, ET AL.,
Petitioners,

v.

ALBERTO GONZALES, Attorney General,
Respondent.*

ON PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Lipez, and Howard, <u>Circuit Judges</u>.

<u>Daniel F. Cashman</u>, <u>Cashman & Lovely, P.C.</u>, and <u>Susanna L. Shafer</u>, on brief, for petitioners.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, <u>Emily Anne Radford</u>, Assistant Director, and <u>Keith I Bernstein</u>, Attorney, Department of Justice, Civil Division, Office of Immigration Litigation, on brief for respondent.

June 3, 2005

---

*Alberto Gonzales was sworn in as United States Attorney General on February 3, 2005. We have therefore substituted Attorney General Gonzales for John Ashcroft as the respondent. <u>See</u> Fed. R. Civ. P. 25(d)(1); Fed. R. App. P. 43(c)(2).

**Per Curiam**.  Petitioner Mihallaq Ziu asks us to review the decision of the Board of Immigration Appeals ("BIA") summarily affirming the immigration court's rejection of his application for asylum and withholding of deportation.[1]  Petitioner, a citizen of Albania, sought relief on the ground that he was persecuted by the Socialists on the basis of his political opinion.

We recite the facts in accord with petitioner's testimony because the immigration judge ("IJ") found him largely to be credible.  Petitioner is an anti-communist supporter of Albania's Democratic Party.  He worked as a teacher/principal in Albania's school system from 1973 until April 22, 2001.  Petitioner testified that his persecution began in 1991, after he ordered the removal of a portrait of former dictator Enver Hoxha from the school where he taught.  As a consequence, he was threatened at gunpoint, his students were beaten, and he was compelled to close the school for a week.  Petitioner conceded that there was general unrest in Albania during this period, and that many schools were forced to close.

From 1992 to 1997, Petitioner suffered no difficulties, as the Democratic Party which he supported was in power. Petitioner testified that "life was great," and he obtained a favorable teaching position through the aid of a member of

---

[1]Co-petitioner Vasilika Ziu is Petitioner's spouse, and her claim is derivative of his.

parliament. His troubles returned in 1997, however, when the Socialists returned to power.

Petitioner stated that, in April 1997, his teenage daughter was threatened on her way to school by unknown armed and masked men who said they would make her a "prostitute." They also called petitioner at his home and told him (falsely) that his daughter had been in an accident. Fearing that his daughter would be abducted, petitioner kept her home from school for a month and then started walking her to school himself. Petitioner testified that he later sent her to America to attend college to make sure that she would be safe. In 1998, petitioner formally joined the Democratic Party and allowed the Democratic Party's local youth groups to meet at his home in May and June. As a consequence of these meetings, his home was searched and his son was arrested in October 1999. Petitioner asserts that his son was held overnight and beaten for "no reason," as no charges were ever filed.

In September 2000, petitioner was taunted by Socialist supporters for his party membership and beaten when he assisted in the local election. Although he did not require medical care after this attack, he reported it to Democratic Party officials (but not the police). In November 2000, petitioner was warned that he would be fired from his job if he did not cease his political activities. He refused to comply, but no adverse employment action was taken. In February 2001, he was beaten by masked men on his return from a

Democratic Party meeting. As before, he did not require medical care and reported the incident only to party officials. Two months later, after experiencing additional telephonic threats, petitioner left Albania. When petitioner overstayed his visitor's visa in the United States, he was placed in removal proceedings and sought asylum and withholding of removal.

The IJ held that petitioner had failed to meet his burden of establishing past persecution or a reasonable fear of future persecution. The IJ concluded that petitioner had failed to establish that the threats to his daughter and the arrest of his son were due to petitioner's political activities, and that the few incidents that were directed against petitioner based upon his politics did not amount to persecution. The IJ found significant evidence that petitioner regularly traveled abroad, with at least one trip taking place shortly after one alleged attack, but that he always returned. The IJ concluded that petitioner's motivation for coming to the United States was for a better economic life.

Because the BIA summarily affirmed the IJ's decision, we review the IJ's decision directly. See Katebi v. Ashcroft, 396 F.3d 463, 465-66 (1st Cir. 2005). We review the IJ's decision under a deferential "substantial evidence" standard, and "[t]he [IJ's] decision will be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 256 (1st Cir.

-4-

2004) (internal citation and quotation omitted). "To reverse the [IJ's] finding we must find that the evidence not only supports that conclusion, but compels it . . . ." INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992) (emphases in original); see also Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003) ("Merely identifying alternative findings that could be supported by substantial evidence is insufficient to supplant the BIA's findings.")  However, questions of law are reviewed de novo. Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004).

"The alien bears the burden of establishing eligibility for asylum by showing that he qualifies as a refugee." Id. at 6.

> The term "refugee" means (A) any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). An alien can show that he is entitled to asylum in two ways: (1) establishing past persecution, which creates a rebuttable presumption of a well-founded fear of persecution, or (2) establishing a well-founded fear of future persecution. Carcamo-Recinos, 389 F.3d at 257.

"To prove past persecution, an applicant must provide 'conclusive evidence' that he has suffered persecution on one of the five protected grounds: race, religion, nationality, membership

-5-

in a particular social group, or political opinion." Romilus, 385 F.3d at 6. "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). We have described establishing past persecution as "a daunting task." See Diab v. Ashcroft, 397 F.3d 35, 39 (1st Cir. 2005) (internal citation and quotation omitted).

Petitioner raises the following challenges to the IJ's decision: (1) the IJ erred in failing to consider his evidence of past persecution in the aggregate (despite her conclusion that his testimony was credible); (2) the IJ erred in concluding that he was not entitled to a presumption of a well-founded fear of future persecution; and (3) the BIA violated its regulations by utilizing its summary affirmance procedure on an IJ opinion that was clearly erroneous. Because the success of petitioner's second and third argument depend on our accepting the first, our rejection of the first (which we explain below) disposes of all three.

Petitioner begins by positing that there was sufficient record evidence to support the conclusion that threats to his daughter and the arrest of his son were attempts by the Socialists to force petitioner to give up his support for the Democratic Party. This may be true, but it is not enough to prevail; that the record could support an alternate inference from the one drawn by the IJ does not warrant overturning the IJ's decision. See

Albathani, 318 F.3d at 372. Rather, as set forth above, the record must compel the conclusion that petitioner advances for us to upset the IJ's finding. See Elias-Zacarias, 502 U.S. at 481 n. 1.

Here, the primary evidence of a link between the incidents and petitioner's politics was petitioner's testimony that he believed that the threats and arrest were orchestrated by the Socialists to discourage his political activities. But the IJ was free to reject such speculation as to motive, see generally Khalil v. Ashcroft, 337 F.3d 50, 55 (1st Cir. 2003), even while generally finding petitioner credible as to historical facts, see Carcamo-Recinos, 389 F.3d at 258-59. As to the incident involving petitioner's son, the IJ was persuaded that the year and a half that separated the arrest from the political meetings undermined any inference of a link. Further, petitioner admitted that the allegedly arbitrary arrest actually was based on suspicion that petitioner's son was involved in a local burglary and stated in his asylum application that the police may have been looking for a cache of hidden arms. As to the incidents involving petitioner's daughter, two factors led the IJ to conclude that petitioner's political opinion played no causative role. First, trafficking in young women and girls is regrettably widespread in Albania. Second, the harassment stopped when petitioner began walking his daughter to school. In the IJ's view, the harassment likely would have continued if petitioner had been the true target of the

unknown assailants.  These inferences are not unreasonable and therefore were within the discretion conferred upon the IJ by the substantial evidence standard.

The remaining incidents -- two episodes of physical abuse not requiring hospitalization, a police search, and various threats -- do not amount to persecution under our case law.  See, e.g., Nelson, 232 F.3d at 264 (three brief detentions coupled with physical abuse, along with threats and surveillance, not sufficient).  Moreover, there is considerable evidence that petitioner's true motive for coming to the United States was economic, as the IJ found.  First, petitioner obtained exit visas and traveled abroad during the period that he was allegedly being persecuted, but he never sought asylum in the countries that he visited.  Second, the incomes of petitioner and his spouse are considerably higher here than in Albania.  Third, Petitioner stated, in response to a question why he was not politically active in the United States, that "Here, I've come to relax, to work, to find . . . work for myself and my family."  In sum, substantial evidence supports the IJ's decision to reject petitioner's applications for asylum and withholding of removal.[2]

---

[2]Petitioner's withholding of removal claim is doomed by our rejection of his asylum claim.  See Romilus, 385 F.3d at 8 (failure to satisfy the more lenient asylum standard necessarily means that the higher withholding of removal standard cannot be met).

For the reasons stated above, the petition is **denied.**

So ordered.