# United States Court of Appeals

## For the First Circuit

No. 03-1569

MARY NEWMAN AFFUL,

Petitioner,

v.

JOHN ASHCROFT,
UNITED STATES ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch and Lipez,
Circuit Judges.

Randall L. Johnson, with whom Johnson & Associates, P.C. was on brief, for petitioner.
Frances M. McLaughlin, Attorney, Office of Immigration Litigation, Civil Division, with whom Peter D. Keisler, Assistant Attorney General, Civil Division, and Linda S. Wendtland, Assistant Director, were on brief, for respondent.

August 6, 2004

**TORRUELLA**, **Circuit Judge**.  Mary Newman Afful, a native and citizen of Ghana, petitions for relief from an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's decision.  Afful argues that the BIA committed three reversible errors: (1) affirming the Immigration Judge's denial of her applications for political asylum and withholding of deportation; (2) affirming the Immigration Judge's denial of her application for suspension of deportation as pretermitted; and (3) denying her motion to remand the case to an Immigration Judge.  We affirm the BIA's order in full.

Afful entered the United States at New York, New York in October 1989 using another person's passport.  On March 16, 1995, the Immigration and Naturalization Service ("INS")[1] issued an order to show cause charging Afful with entering the United States on May 27, 1985, without inspection.  At a hearing before the Immigration Judge on October 4, 1995, Afful admitted the allegations against her, conceded removability, and requested asylum, withholding of removal, and suspension of deportation.  On September 29, 1997, the INS amended the Order to Show Cause to read that Afful entered the United States in October 1989.  On the same day, the Immigration Judge held a hearing on Afful's asylum

---

[1]    In March 2003, the relevant functions of the INS were transferred into the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement ("BICE").  For simplicity, we refer to the agency throughout this opinion as the INS.

application, continuing the case to May 29, 1998. On October 23, 1997, the INS added a charge for procuring entry into the United States through fraud or willful misrepresentation of material fact because Afful had admitted at the September 29, 1997 hearing that she had used another person's passport to enter the United States.

On October 1, 1998, the Immigration Judge denied Afful's applications for asylum, withholding of deportation, suspension of deportation and voluntary departure. Afful appealed to the BIA on November 2, 1998. On June 19, 2002, Afful filed a motion to remand to the Immigration Judge so that she could apply for adjustment of status due to the filing of an approved Form I-140 filed by her employer. On March 29, 2003, the BIA affirmed the Immigration Judge's decision and denied Afful's motion to remand. This appeal followed.

## I. **Denial of Asylum and Withholding of Deportation**

Section 208(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1159(a), authorizes the Attorney General to exercise his discretion to grant asylum to refugee aliens. The alien bears the burden of demonstrating eligibility for asylum. See Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003). An applicant may meet that burden by demonstrating past persecution or a well-founded fear of future persecution based on "race, religion, nationality, membership in a particular social group, or political opinion." Id. (quoting 8 C.F.R. § 208.13(b)(1)) (internal

-3-

quotation marks omitted).  To establish past persecution, an applicant must provide "conclusive evidence" that she was targeted on any of the five grounds.  Fesseha v. Ashcroft, 333 F.3d 13, 18 (1st Cir. 2003) (quoting Albathani, 318 F.3d at 373).  To show a well-founded fear of future persecution, an applicant must meet both subjective and objective prongs.  Id. (citation omitted).  To satisfy the objective prong, an applicant's testimony alone may be sufficient, but it must constitute credible and specific evidence of a reasonable fear of persecution.  El Moraghy v. Ashcroft, 331 F.3d 195, 203 (1st Cir. 2003).  To meet the subjective prong, the applicant must show her fear is genuine.  See Aguilar-Solís v. INS, 168 F.3d 565, 572 (1st Cir. 1999).

"Determinations of eligibility for asylum or withholding of deportation are reviewed under the substantial evidence standard . . . ."  Fesseha, 333 F.3d at 18.  The agency decision is "upheld if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Id. (quoting INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992)).  Under the substantial evidence standard, "[t]o reverse the BIA finding, we must find that the evidence not only supports that conclusion, but compels it . . . ."  Elías-Zacarías, 502 U.S. at 481 n.1 (emphasis in original).

Afful testified that she had a fear of persecution on account of her affiliation with the Popular Front Party ("PFP"), a

-4-

political group opposed to the military regime in Ghana run by General Jerry Rawlings. According to her testimony, Afful attended PFP rallies two to three times a month. She helped her two brothers, Safo-Adu and Joe Donkor, by distributing leaflets, participating in meetings, and keeping important party documents that were critical of military rule. She testified that her brother took the papers from her around 1984. When the Immigration Judge asked Afful what happened in the five years between 1984 and 1989 when she left Ghana, Afful testified that her brother was arrested and that the government was mistreating people. Afful testified that her brother Safo-Adu, a leader of the PFP, lost his property and was arrested at least three times by the government because of his involvement with the PFP. He was never physically harmed. Her brother Joe Donkor lost his job and had his house ransacked due to his membership in the PFP. Afful testified that the government was aware of her membership with the PFP because of her affiliation with her brothers, although she was never arrested.

Afful admitted that she used another person's passport to enter the United States. When asked why she had pled to entering the United States without inspection when she had actually entered with another person's passport, Afful responded that she was afraid. The Immigration Judge then asked Afful if she told her attorneys that she entered the United States using another person's passport. After the Immigration Judge admonished Afful several

times to tell the truth, Afful testified that she had not told her attorneys but then contradicted herself and said that she had.

Afful's asylum application stated that she entered the United States on May 27, 1985; during testimony she admitted, however, that she actually entered in October 1989. The Immigration Judge asked Afful whether she told her attorneys about the incorrect date before or after it was filed with the INS. Afful had to be reminded repeatedly to answer the question and tell the truth fully before Afful stated that she told her attorneys about the incorrect date after the application was submitted to the INS. The Immigration Judge also asked Afful whether she told the immigration officer at her asylum interview about the incorrect date. Afful admitted that she did not tell the immigration officer about the incorrect date and instead told the officer that everything in her application was true.

## A.  Credibility Determination

The Immigration Judge found that Afful's testimony concerning her fear of returning to Ghana was not credible. "[W]hen a hearing officer who saw and heard a witness makes an adverse credibility finding and supports it with specific findings, an appellate court ordinarily should accord it significant respect." Aguilar-Solís, 168 F.3d at 571 (citations omitted). We begin by confirming that the Immigration Judge "offer[ed] a specific, cogent reason for [his] disbelief." Qin v. Ashcroft, 360

-6-

F.3d 302, 306 (1st Cir. 2004) (quoting <u>El Moraghy</u>, 331 F.3d at 205), and review the Immigration Judge's reason on the substantial evidence standard.  <u>Aguilar-Solís</u>, 168 F.3d at 571.

The Immigration Judge discussed the fact that Afful's asylum application said she entered the country in 1985, when she actually entered the country in 1989.  The Immigration Judge noted that Afful failed to inform anyone, including her attorneys, that she had fraudulently entered the country using someone else's passport.  The Immigration Judge also discussed Afful's admission that she did not give truthful answers to the immigration officer who interviewed Afful under oath in connection with her asylum application.  Finally, the Immigration Judge found that Afful's testimony was evasive and contradictory.  These findings were amply supported by the record, which shows that the Immigration Judge had to ask Afful questions repeatedly before she answered, and that the Immigration Judge had to admonish Afful on numerous occasions to tell the truth.  For example, the Immigration Judge had to ask Afful repeatedly if she told her attorneys that she had used another person's passport to enter the United States before Afful gave an answer that was both evasive and contradictory:

> Q.   I said did you [Afful] tell them
>      [Afful's attorneys] that [you
>      entered the United States using
>      another person's passport]?
> A.   (No audible response).
> Q.   Ma'am.
> A.   My Lord.
> Q.   I'm asking you a question.

```
A.   Yes, my Lord.  I know.
Q.   Well, what do you think we're here
     for? Okay.  Did you tell them,
     your attorney that, or didn't you?
A.   (No audible response).
Q.   Ma'am.
A.   My Lord.
Q.   Please answer the question.
A.   I know.
Q.   I know.  You know.  I know.  But
     answer the question. Did you tell
     your attorney that?  That you used
     somebody else's name to come to
     the United States and you were
     admitted as a visitor?
A.   (No audible response).
Q.   You have to answer the question.
     It's either yes or no.  Which is
     it?
A.   (No audible response).
     . . . .
Q.   Well, tell the truth.  Did you
     tell your attorney, who filled out
     your asylum application, that you
     entered the United States with
     this name and a passport and you
     came here as a visitor?
A.   I didn't tell her.  I didn't tell
     her I entered the United States
     with somebody's [sic].  I said I
     entered the United States with
     somebody's passport, but I didn't
     go into it.
```

In affirming the Immigration Judge's decision, the BIA discussed these findings and noted other inconsistencies in Afful's testimony.  These inconsistencies were not, as Afful argues, "minor discrepancies in dates that are attributable to the applicant's language problems or typographical errors . . . ."  Damaize-Job v. INS, 787 F.2d 1332, 1337 (9th Cir. 1986).  They involved important and material facts relevant to her application.  Furthermore,

-8-

witness demeanor and conflicting testimony are crucial factors in assessing credibility. See Cordero-Trejo v. INS, 40 F.3d 481, 491 (1st Cir. 1994). The Immigration Judge and BIA supported the adverse credibility determination with specific findings, and nothing in the record before us compels a contrary conclusion. See Aguilar-Solís, 168 F.3d at 571.

B. **Future Persecution**

Afful does not argue that she faced past persecution in Ghana, but that she has a well-founded fear of persecution and there is a reasonable possibility that she will be persecuted if she returns to Ghana. To establish a well-founded fear of future persecution, an applicant must prove that the fear is "both genuine and objectively reasonable." Id. at 572 (citation omitted). There is substantial evidence that Afful did not meet this burden.

Not only was Afful's testimony evasive and conflicting, it was insufficient to establish that "a reasonable person in the asylum applicant's circumstances would fear persecution on account of a statutorily protected ground." Id. (citations omitted). The only incidents Afful testified to involved her brothers. One brother lost his job because of his affiliation with the PFP, and another was arrested three times and lost his property. Neither brother was physically harmed. Afful was never arrested or physically harmed. This evidence does not compel a finding that a

reasonable person in Afful's circumstances would fear persecution on account of a statutorily-protected ground.

Because we find substantial evidence to support the Immigration Judge's and BIA's findings that Afful was not a credible witness and failed to demonstrate a well-founded fear of future persecution due to a protected ground, we affirm the denial of asylum.

Because Afful is unable to satisfy the less stringent standard for asylum, she is a fortiori unable to satisfy the test for withholding of deportation. See Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003). We therefore affirm the denial of withholding of deportation.

## II.  **Pretermitting the Application for Suspension of Deportation**

Afful contends that it was error to pretermit her application for suspension of deportation. An application is pretermitted when disqualified for failure to meet the threshold eligibility requirement that an alien have resided in the United States for a sufficient period of time to obtain the discretionary relief of suspension of deportation. Under the former INA, the requisite period of residence was seven years, and the period continued to accrue until the alien applied for suspension of deportation. 8 U.S.C. § 1254(a)(1) (1994) (repealed 1996). The passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996 established a "stop-time"

rule that caps an alien's cumulative period of residence once a "notice to appear" is issued. IIRIRA § 309(c)(5); 8 U.S.C. § 1229b (d)(1); see Suassuna v. INS, 342 F.3d 578, 581 (6th Cir. 2003) ("Prior to the enactment of the stop-time rule, aliens would often delay their deportation proceedings until they accrued sufficient continuous presence in the United States to qualify for relief.") (citing H.R. Rep. 104-879 (1997)). IIRIRA also changed the name of the relief from "suspension of deportation" to "cancellation of removal." 8 U.S.C. § 1229b(d)(1).

Afful arrived in the United States in October 1989 and was served with an order to show cause on April 21, 1995. Afful argues that the stop-time provision in 8 U.S.C. § 1229b(d)(1) was erroneously applied to her case. As the sole support for this contention, Afful points to one of several transitional rules included in the IIRIRA to address the applicability of the amendments to persons already in proceedings with the INS prior to April 1, 1997, as she was. Section 309(c)(1), "GENERAL RULE THAT NEW RULES DO NOT APPLY," provides that:

> Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings as of the title III-A effective date--
> (A) the amendments made by this subtitle shall not apply, and
> (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

-11-

IIRIRA § 309(c)(1), Pub. L. No. 104-208, 110 Stat. 3009-627 (1996) (emphasis added). The general rule is relevantly excepted in this case by a succeeding provision of the subsection in § 309(c)(5), which states the "transitional rule with regard to suspension of deportation":

> Paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to notices to appear issued before, on, or after the date of the enactment of this Act.

IIRIRA, § 309(c)(5), Pub. L. No. 104-208, 110 Stat. 3009 (1996). This language, then, provides that even if an alien had been served with a notice to appear prior to April 1, 1997, the new stop-time rule would apply. While Afful was issued an "order to show cause" ("OSC") instead of a "notice to appear," the availability of a differing treatment for these terms under § 309(c)(5) was foreclosed the following year with the passage of the Nicaraguan Adjustment and Central American Relief Act ("NACARA") which, among other things, extensively and retroactively amended § 309(c)(5) to read as follows:

> (5) Transitional rules with regard to suspension of deportation.--
>
> (A)    In general.--Subject to subparagraphs (B) and (C), paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to orders to show cause (including those referred to in section 242B(a)(1) of the Immigration and Nationality Act, as in effect before the

-12-

> title III-A effective date), <u>issued before,</u>
> <u>on, or after the date of the enactment of this</u>
> <u>Act</u>.

NACARA § 203(a)(1), Pub. L. No. 105-100, 111 Stat. 2160 (1997) (emphasis added). After the passage of NACARA, the BIA issued a decision construing IIRIRA's transitional rule in § 309(c)(5) as clarified by the NACARA amendments "to apply the stop-time rule to all applications for this particular type of relief, whether in the form of suspension of deportation proceedings or cancellation of removal." <u>In re Nolasco-Tofino</u>, 22 I. & N. Dec. 632, 637 (BIA 1999).

Since NACARA and <u>In re Nolasco-Tofino</u>, every circuit to have addressed the question has found that the stop-time rule applies retroactively to orders to show cause issued prior to the enactment of the IIRIRA. <u>See</u> <u>Suassuna</u> v. <u>INS</u>, 342 F.3d 578 (6th Cir. 2003); <u>Ram</u> v. <u>INS</u>, 243 F.3d 510 (9th Cir. 2001); <u>Pinho</u> v. <u>INS</u>, 249 F.3d 183 (3d Cir. 2001); <u>Angel-Ramos</u> v. <u>Reno</u>, 227 F.3d 942 (7th Cir. 2000); <u>Ayoub</u> v. <u>INS</u>, 222 F.3d 214 (5th Cir. 2000); <u>Afolayan</u> v. <u>INS</u>, 219 F.3d 784 (8th Cir. 2000); <u>Rivera-Jiménez</u> v. <u>INS</u>, 214 F.3d 1213 (10th Cir. 2000); <u>Tefel</u> v. <u>Reno</u>, 180 F.3d 1286 (11th Cir. 1999). We agree and conclude that the BIA correctly affirmed the pretermittance of Afful's application for suspension of deportation.

## III.  **Motion to Remand**

Afful moved to remand proceedings to the Immigration Judge in order to present an application for adjustment of status under § 245(i) of the INA, 8 U.S.C. § 1255(i).[2]  The basis for the application would have been the approved visa petition that she submitted with the motion along with an application to adjust status and evidence relevant to her employment-based visa.  A precondition to granting her motion is her prima facie eligibility for the relief sought on remand.  See INS v. Abudu, 485 U.S. 94, 104 (1988).  We review the BIA's determination as to her prima facie eligibility for abuse of discretion.  See Fesseha, 333 F.3d at 20.

The BIA found that because the Immigration Judge determined that Afful entered the United States with a fraudulent passport and visa and was inadmissible under § 212(a)(6)(C)(i) of

---

[2]  The BIA has recognized that, while motions to amend are not explicitly addressed by applicable statutes and regulations, "such motions are commonly addressed to the Board." Matter of Coelho, 20 I. & N. Dec. 464, 471 (BIA 1992).  BIA practice has taken a functional approach: where the motion "simply articulates the remedy requested by an appeal, [the BIA] treat[s] it as part of the appeal and do[es] not require it to conform to the standards for consideration of motions." Id.  "However, where a motion to remand is really in the nature of a motion to reopen or a motion to reconsider, it must comply with the substantive requirements for such motions." Id.  "In reviewing the Board's decision to construe [Afful]'s motion to remand as a motion to reopen, we accord the Board considerable deference in interpreting its own regulations." Krougliak v. INS, 289 F.3d 457, 460 (7th Cir. 2002).  Accordingly, we review Afful's motion to remand as a motion to reopen and under the same standards. See, e.g., id.; Al Najjar v. Ashcroft, 257 F.3d 1262, 1301-02 (11th Cir. 2001) (citations omitted).

the INA, 8 U.S.C. § 1182(a)(6)(C)(i), Afful could only obtain relief under § 245(i) if she obtained a waiver of inadmissibility. 8 U.S.C. § 1182 (a)(9)(B)(v). Such a waiver, however, only issues to someone

> who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien.

Id. The BIA correctly determined that Afful did not meet criteria essential to her prima facie eligibility for the relief requested.

## IV. Conclusion

For the foregoing reasons, the order of the BIA is affirmed.

**Affirmed**.

-15-