*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0339p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NOEL CASILLAS-FIGUEROA,

*Petitioner,*

*v.*

No. 04-3684

ALBERTO GONZALES, Attorney General,

*Respondent.*

>

---

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A73 376 720 Detroit.

Submitted: July 22, 2005

Decided and Filed: August 12, 2005

Before: GIBBONS and COOK, Circuit Judges; PHILLIPS, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Lila Sljivar, Michael E. Piston, Troy, Michigan, for Petitioner. Anthony W. Norwood, Terri J. Scadron, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent.

---

## OPINION

---

COOK, Circuit Judge. Petitioner Noel Casillas-Figueroa, a citizen and native of Mexico, seeks review of a Board of Immigration Appeals order denying him suspension of deportation on the ground that he cannot show seven years of continual physical presence in the United States before being served with an order to show cause. For the following reasons, we affirm the BIA and deny the petition.

---

[*] The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

I

Casillas has been continuously present in the United States since October 1988. In January 1995, the INS served him with an order to show cause. In December 1995, he applied for suspension of deportation, pressing his continual presence in the United States for seven years—which, combined with "good moral character" and a showing of "extreme hardship," qualified him for suspension of deportation. 8 U.S.C. § 1254(a) (1994). In March 1996, the IJ granted suspension, and the INS appealed.

Meanwhile, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), effective April 1, 1997. It provided, among other things, that the issuance of a notice to appear *stops time* for counting how long an alien has been continuously present in the United States. 8 U.S.C. § 1229b(d). In November 1997, Congress amended the law to make clear that the stop-time rule also applies to orders to show cause. *See Ashki v. INS*, 233 F.3d 913, 918 (6th Cir. 2000).

The BIA decided the INS's appeal in Casillas's case in June 2001. It rejected the INS's arguments, but nonetheless remanded to the IJ for reconsideration in light of the IIRIRA.

The IJ found that under the new "stop-time" rule, Casillas failed to satisfy the seven-year continuous-presence requirement for suspension of deportation—because he arrived in the United States in October 1988 and received his Order to Show Cause in January 1995, he fell nine months short. The BIA then affirmed the IJ's denial of suspension of deportation.

Casillas now makes three arguments challenging the denial. First, he argues that the stop-time rule does not apply to him because the IJ initially granted him suspension of deportation before the rule went into effect. Second, he argues that even if the stop-time rule applies, his nine years of continuous presence in the United States after his original stop-time date constitute a second continuous-presence period entitling him to suspension of deportation. Finally, he argues that denial of suspension of deportation would violate his due-process rights. We reject all three arguments.

II

Casillas argues that the stop-time rule does not apply to him because the IJ initially granted him suspension of deportation before the IIRIRA's passage. This argument fails, however, because the stop-time rule is retroactive:

> [F]or purposes of determining eligibility for suspension of deportation in cases that were pending as of April 1, 1997, the law of the Circuit is that the alien's period of continuous physical presence ends upon service of the order to show cause, even if such order was issued prior to the enactment of the stop-time rule.

*Suassuna v. INS*, 342 F.3d 578, 582-83 (6th Cir. 2003).

Despite this, Casillas urges us to make an exception to our rule, as we did in *Aoun v. INS*, 342 F.3d 503 (6th Cir. 2003). There a panel of this court acknowledged the stop-time rule's retroactivity—and then nonetheless decided *not* to apply the rule retroactively in that case because doing so would have been "unfair and inequitable." *Id.* at 509. We decline to follow *Aoun*'s example, however, because it contradicts earlier Sixth Circuit cases unambiguously establishing the stop-time rule's retroactivity. *See, e.g., Bartoszewska-Zajac v. INS*, 237 F.3d 710, 713 (6th Cir. 2001) (Congress provided a "clear directive" that the rule apply retroactively); *Ashki*, 233 F.3d at 918-19.

Even if we were to credit *Aoun*, we find Casillas's case distinguishable. In *Aoun*, the court found retroactive application of the stop-time rule "unfair" because the BIA *closed* Aoun's case sua sponte in 1988 so he could apply for legalization, and then did nothing more until the INS petitioned to reinstate the proceedings in 2000. 342 F.3d at 504-09. Here, in contrast, Casillas's case pended (including an appeal) on the IIRIRA's effective date. Thus this case falls squarely within this court's rule applying the stop-time rule to pending cases. *See Bazzi v. Ashcroft*, 118 Fed.Appx. 953, 959 (6th Cir. 2004) (distinguishing that case from *Aoun* because petitioner "was aware at all times that a case was pending against him, and that he might be deported"); *Suassuna*, 342 F.3d at 582-83; *see also Pinho v. INS*, 249 F.3d 183, 188 (3d Cir. 2001) (collecting court of appeals cases holding that "the stop-time rule applies to all pending cases in which a *final* administrative decision had not been rendered by the [time of] enactment of the [IIRIRA]") (emphasis added).

## III

Casillas next argues that even if the court applies the stop-time rule, he qualifies for suspension of deportation, because he has continuously remained in the United States for more than seven years after the INS issued its order to show cause. But the law does not support his view that a second continuous-presence clock starts running when the INS issues an order to show cause. The statute simply says that "any period" of continuous physical presence "ends" when the INS serves an alien with an order to show cause; it does not say that the clock is reset and begins to run again.

Allowing a second continuous-presence period after issuance of an order to show cause would contradict the stop-time rule's purpose—removing the incentive for aliens to delay proceedings. *See In re Mendoza-Sandino*, 22 I & N Dec. 1236, 1243 (BIA 2000) (en banc). It would also render superfluous language in the statute stopping time at the issuance of an order to show cause or the commission of certain criminal offenses, "*whichever is earliest.*" *Id.* at 1241 (emphasis added). Thus both the BIA and every circuit to consider Casillas's argument has rejected it. *See McBride v. INS*, 238 F.3d 371, 376-77 (5th Cir. 2001); *Ram v. INS*, 243 F.3d 510, 518 (9th Cir. 2001); *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1300 (11th Cir. 2001); *Afolayan v. INS*, 219 F.3d 784, 789 (8th Cir. 2000); *In re Mendoza-Sandino*, 22 I & N Dec. at 1243. We join these courts in holding that no new continuous-presence period begins to run when the INS files an order to show cause.

## IV

Finally, Casillas argues that retroactive application of the stop-time rule here would "interfere with his vested rights in a grant of suspension of deportation," in violation of his due-process rights. But he has no vested right in suspension of deportation, because he had no final order suspending deportation. *See Sad v. INS*, 246 F.3d 811, 820 (6th Cir. 2001) (retroactive IIRIRA application did not violate due process because alien had no vested right to suspension of deportation); *Pinho*, 249 F.3d at 189 (aliens whose deportation has not been suspended have no vested right in suspension of deportation).

Casillas argues his case is distinguishable from *Sad* because there the IJ had not yet suspended deportation, whereas here the IJ did suspend deportation. But the distinction is not meaningful, because in each case, the matter was still pending—i.e., the suspension was not final—when the IIRIRA became effective. We therefore reject Casillas's due-process argument.

## V

For these reasons, we affirm the BIA and deny the petition for review.