**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 06-2784

JEAN WINER TROPNAS,
Petitioner,

v.

MICHAEL B. MUKASEY,[*] Attorney General,
Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lipez, Circuit Judge,

Selya, Senior Circuit Judge,

and Howard, Circuit Judge.

Howard A. Silverman and Ross, Silverman & Levy, LLP on brief
for petitioner.
Peter D. Keisler, Assistant Attorney General, Civil Division,
Terri J. Scadron, Assistant Director, and Kathryn L. Deangelis,
Trial Attorney, Office of Immigration Litigation, United States
Justice Department, on brief for respondent.

July 2, 2008

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael B.
Mukasey has been substituted for former Attorney General Alberto R.
Gonzales.

**Per Curiam**.  Petitioner Jean Winer Tropnas, a native and citizen of Haiti, sought asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  Tropnas maintained that he feared persecution on account of his political activities in Haiti.  An Immigration Judge (IJ) concluded that his fear of future persecution was not well-founded and consequently denied his application and ordered removal.  The Board of Immigration Appeals (BIA), writing separately, affirmed and adopted the IJ's ruling and issued a final order of removal.  Tropnas petitions for judicial review.  Because there is substantial evidence in the record to support the BIA's decision, we deny the petition.

## I.

On or about July 20, 2001, Jean Winer Tropnas entered the United States through Canada.  He was apprehended in Vermont and placed in removal proceedings.  See 8 U.S.C. § 1182(a)(7)(A)(i)(I). Tropnas filed an application requesting asylum, withholding of removal, and protection under CAT.  In support of his application, he claimed to hold a well-founded fear of future persecution on account of his political opinion.  At his hearing, Tropnas offered documentary and testimonial evidence, summarized as follows.

Tropnas became politically active in 1992.  He joined an opposition political party, the Christian Nationalist Party of Haiti (PNCH) and as a member he was responsible for teaching people

in the community about education and advocacy.  Tropnas also was responsible for coordinating activities with other progressive organizations and he eventually became personally active in some of these organizations, promoting, among other causes, literacy and political activity.

The organizations with which Tropnas was involved were critical of Haiti's then-president, Jean-Bertrand Aristide, and Tropnas himself openly expressed his opposition to Aristide and his Fanmi Lavalas Party.  Specifically, Tropnas, an artist, created political drawings critical of Aristide and the government that were displayed and disseminated throughout the community.

Largely because of his political artwork, Tropnas was personally threatened in both 1995 and 1999.  In 1995, after Tropnas returned from hanging political posters, shots were fired at his aunt's house where he was staying.  A friend told Tropnas more "difficulties" would come if he did not cease his political activities.  Later, in 1999, after being similarly warned by a friend, some individuals banged on the door of the aunt's house, telling Tropnas that if he did not stop his political activities they would kill him and his family would be in danger.  A month later, when Tropnas was on his way home from school, neighbors warned him not to return to his aunt's house because Lavalas supporters had set a trap.  He stayed at his father's house and his aunt later confirmed that Lavalas supporters had come to her home

and threatened to harm Tropnas. Tropnas claimed that he did not report these incidents to the police for fear of reprisal but also testified that no member of the government had ever threatened, harmed, or arrested him. He also testified that "[n]obody has ever come to his father's house or sought to find him at that location." Additionally, there was evidence that during this period he made several trips to the Dominican Republic to sell his paintings, voluntarily returning to Haiti after each.

The incidents in 1999 prompted Tropnas to obtain a visa and travel to Jamaica. There he began studies at the Jamaica School of Preaching, a theological school. After one year of school he returned to Haiti in 2000 for six weeks. During his stay in Haiti the electricity was out and three opposition party members in his community were killed. As a result, Tropnas testified, he decided to leave Haiti to finish his studies in Jamaica.

After a short stay in Jamaica, Tropnas left for Canada. Soon after arriving in Canada, Tropnas crossed over the Canadian border into the United States. After he was apprehended, he applied for asylum and appeared in Immigration Court for his hearing. At the hearing, in addition to testifying about his political activities and the incidents in Haiti, Tropnas mentioned that he had a brother in the United States.

At the close of proceedings, the IJ denied Tropnas' application for asylum, withholding of removal, and protection

under CAT. Although stating both that Tropnas appeared to testify truthfully about his political activities and the incidents in Haiti, and that his testimony overall was "credible, consistent and detailed," the IJ nonetheless found his fear of future persecution neither subjectively genuine nor objectively reasonable.[1] In rejecting Tropnas' claim that his fear of persecution was objectively reasonable, the IJ focused on both Tropnas' admission that members of the Haitian government had never threatened, arrested, or harmed him and on his testimony that he had spent six weeks in Haiti on his last visit without incident. The IJ further suggested that Tropnas could safely relocate to his father's home upon his return.

The BIA, in a separate opinion, affirmed and adopted the IJ's findings. Tropnas focuses his petition entirely on the BIA's denial of his asylum claim.[2]

## II.

Where, as here, the BIA has written separately while adopting and affirming an IJ's decision, we review portions of the IJ's decision as part of the final decision of the board. Herandez-Barrera v. Ashcroft, 373 F.3d 9, 20 (1st Cir. 2004). We

---

[1]The IJ did question the veracity of an explanation offered by Tropnas for his entry into the United States from Canada.

[2]Because he makes no argument regarding the BIA's denial of his withholding of removal and CAT claims, those claims have been waived. See Tai v. Gonzales, 423 F.3d 1, 6 (1st Cir. 2005).

apply the deferential "substantial evidence" standard, Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 256 (1st Cir. 2004), and we will uphold the decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Ang v. Gonzales, 430 F.3d 50, 54-55 (1st Cir. 2005) (citation omitted). We will upset the BIA's decision only if "[t]he record evidence would compel a reasonable factfinder to make a contrary determination." 8 U.S.C. § 1252(b)(4)(B); Pan v. Gonzales, 445 F.3d 60, 61 (1st Cir. 2006).

In order to obtain asylum, the petitioner bears the burden of establishing that he is a "refugee." Afful v. Ashcroft, 380 F.3d 1, 3 (1st Cir. 2004). A petitioner may establish refugee status by demonstrating past persecution, or a well-founded fear of future persecution, on the basis of one of five statutory grounds: race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A).

To be "well-founded" a fear of future persecution must be both (1) subjectively genuine and (2) objectively reasonable. Toloza-Jimenez v. Gonzales, 457 F.3d 155, 161 (1st Cir. 2006). As to the second prong, a petitioner must provide "credible, direct, and specific evidence" that would objectively support a reasonable fear of individualized persecution. Guzman v. INS, 327 F.3d 11, 16 (1st Cir. 2003) (quoting Ravindran v. INS, 976 F.2d 754, 758 (1st Cir. 1992)). The cases suggest that meeting the objective

reasonableness requirement requires establishing a "reasonable possibility of persecution." See e.g., Aguilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999) (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 450 (1987)).

We conclude that "reasonable, substantial, and probative" evidence supports the BIA's determination that Tropnas did not establish a well-founded fear of future persecution. Although Tropnas did establish that he was politically active in Haiti, substantial evidence supports the conclusion that his fear of future persecution is not objectively reasonable.[3]

Although Tropnas was personally threatened in 1995 and 1999, nine years have passed since the latest incident. See Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 n.2 (1st Cir. 2005) (noting significant passage of time following fear-triggering incident may serve to rebut even a presumption of future persecution). The events in 2000 that prompted Tropnas' most recent departure from Haiti, specifically the loss of electrical power and the killing of three individuals in his community, were not personally connected to him in any way.

Moreover, Tropnas produced no evidence that the government or other groups continued actively looking for him. His

---

[3]Because substantial evidence supports the BIA's determination that Tropnas' fear was objectively unreasonable, we need not address its determination regarding the subjective genuineness of Tropnas' fear.

failure to do so is especially damaging, given that he has family in Haiti who would likely communicate any such threats and friends who have warned him about threats in the past.

Finally, as the IJ recognized, even assuming that individuals in Haiti are still looking for Tropnas, that would not necessarily create an objectively reasonable basis for his fear because in the past Tropnas has safely relocated to his father's house -- a place where he himself indicated his persecutors have never sought him out. See 8 C.F.R. § 1208.13(b)(1)(i)(B), (b)(2)(ii); Susanto v. Gonzales, 439 F.3d 57, 61 (1st Cir. 2006) (denying asylum where one of petitioners testified that she and her family had safely relocated to uncle's home during periods of strife); El Moraghy v. Ashcroft, 331 F.3d 195, 199 (1st Cir. 2003) (noting evidence of ability to relocate may undercut well-founded fear of future persecution).

In addition to challenging the BIA's conclusions regarding his well-founded fear of persecution, Tropnas claims that we must reverse the BIA's ruling on the ground that the administrative tribunal failed to address certain matters in its opinion. See El Moraghy, 331 F.3d at 203. Specifically, he alleges that the BIA "made no specific analysis of the country conditions, and failed to address the country conditions evidence as it related to [his] claim." But the IJ did specifically state that, "the conditions in Haiti have changed, although they do

remain violent, chaotic, and politically confusing."  The BIA adopted those findings in its opinion.

### III.

For the reasons discussed above, the petition for review must be denied.