# United States Court of Appeals
## For the First Circuit

No. 12-1063

JESUS ERNESTO AGUIRRE,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Robert D. Watt, Jr. on brief for petitioner.
Katharine E. Clark, Trial Attorney, Office of Immigration
Litigation, United States Department of Justice, Civil Division,
Stuart F. Delery, Acting Assistant Attorney General, and Russell
J.E. Verby, Senior Litigation Counsel, on brief for respondent.

August 28, 2013

**LIPEZ, Circuit Judge**. Jesus Ernesto Aguirre petitions for review of an order denying his application for suspension of deportation, a form of relief that was available to certain noncitizens before 1996. To be eligible for suspension of deportation, Aguirre had to show that he had accrued seven years of continuous physical presence in the United States since his arrival. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, 3009-546. This law, among other changes, enacted a statute known as the "stop-time rule," which provides that for the purposes of determining eligibility for relief, a noncitizen's years of physical presence are cut off when he is served with notice of the commencement of removal proceedings. See 8 U.S.C. § 1229b(d)(1). Because Aguirre arrived in the United States in 1986, and his proceedings began in 1987, the agency concluded that, under the stop-time rule, Aguirre had not accrued the necessary years of physical presence.

Aguirre raises several challenges to the agency's determination, all of which are either unavailing or unexhausted. We therefore deny Aguirre's petition for review in part and dismiss it in part.

**I.**

Addressing Aguirre's arguments requires us to explain not only the facts of his specific case, but also the significant

alterations in the immigration statute that occurred during the pendency of his removal proceedings. We draw the facts from the written order of the immigration judge ("IJ"), as well as the administrative record.

Aguirre, a national of Colombia, entered the United States without inspection on or about August 10, 1986. On January 9, 1987, he was personally served with an order to show cause ("OSC") that placed him into deportation proceedings.[1] A signature page on the OSC indicates Aguirre's personal receipt of the document. The OSC was served at the following address: "c/o Juan B. Gonzalez, 13 Kossuth Street, Pawtucket, R.I. 02860." The OSC did not state an initial hearing date. Instead, it said that the hearing's date, time, and location were "to be set" later.

On February 5, 1987, the IJ issued a notice of hearing for February 23. This notice was sent to "30 Kossuth Street," an address different from the one on the OSC. The hearing notice was returned to sender; there is no indication that Aguirre ever received actual notice of the hearing. The IJ held the scheduled

---

[1] An OSC was the title given to charging documents in deportation/exclusion proceedings before 1996; OSCs are now termed "notices to appear," or "NTAs." Peralta v. Gonzales, 441 F.3d 23, 26 n.4 (1st Cir. 2006). Additionally, noncitizens were previously placed into "deportation" and "exclusion" proceedings, depending on whether they were already present in the United States or were seeking admission. IIRIRA replaced those terms with "removal proceedings," which are generally applicable to noncitizens in both groups, including those present in the United States without inspection. See Succar v. Ashcroft, 394 F.3d 8, 12-13 (1st Cir. 2005).

hearing on February 23, at which Aguirre did not appear. The IJ ordered the case administratively closed until he could be located.

At the time Aguirre's deportation proceedings commenced, there existed a form of relief called suspension of deportation. Among other requirements, an applicant for suspension had to demonstrate seven years of continuous physical presence before applying for relief. See 8 U.S.C. § 1254(a)(1) (1996). During the dormancy of Aguirre's case, Congress passed IIRIRA, which worked an array of changes in the immigration laws. One of these was the establishment of the stop-time rule, which "caps an alien's cumulative period of residence once a 'notice to appear' is issued." Afful v. Ashcroft, 380 F.3d 1, 6 (1st Cir. 2004); see also 8 U.S.C. § 1229b(d)(1). Congress also eliminated suspension of deportation and replaced it with a form of relief called cancellation of removal, which set different eligibility requirements. See Peralta v. Gonzales, 441 F.3d 23, 26 (1st Cir. 2006); see also 8 U.S.C. § 1229b.

Addressing the circumstances of individuals who were already in proceedings at the time of its passage, IIRIRA's transitional rules provided that suspension of deportation remained available to noncitizens who were placed into proceedings before the law's effective date, which was April 1, 1997. See IIRIRA § 309(c)(1). As we held in Afful, however, the IIRIRA transitional rules, combined with a subsequent amendment to those rules passed

-4-

with the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, 111 Stat. 2160, 2196 (1997), applied the stop-time rule retroactively to OSCs issued before IIRIRA's enactment. 380 F.3d at 6-7; see also Peralta, 441 F.3d at 27-28; In re Nolasco-Tofino, 22 I. & N. Dec. 632, 636 (BIA 1999) (en banc) ("We read [the transitional rules] as requiring us to apply the stop time rule of cancellation of removal to all pending applications for suspension of deportation, unless expressly exempted from the general rule."). Consequently, noncitizens who were already in proceedings as of IIRIRA's effective date are unable to demonstrate the requisite years of continuous physical presence if they were issued OSCs before meeting the duration requirement.

Aguirre's proceedings became active again in 2005, when he was issued a new NTA charging him with removability as a noncitizen present without being admitted or paroled. On April 11, 2007, Aguirre conceded removability, but applied for asylum and withholding of removal. (These applications were later withdrawn, and are not at issue in this petition.) At some point, it was discovered that Aguirre already had an open immigration case based on his 1987 OSC, and the proceedings based on his 2005 NTA were terminated.

Aguirre then moved to reopen and recalendar the deportation proceedings that had begun in 1987, and applied for

suspension of deportation. In a written submission and at a hearing before the IJ, Aguirre argued that the stop-time rule should not apply retroactively to him in part because the case had "been hanging around for 20, 25 years" due to delay that was not of his making. Aguirre contended that the equities of his case merited an exception to the retroactive application of the stop-time rule, citing a Sixth Circuit case adopting such an approach. See Aoun v. INS, 342 F.3d 503, 508-09 (6th Cir. 2003).

In a written order, the IJ found Aguirre statutorily ineligible for suspension for failure to demonstrate the necessary years of continuous physical presence. Citing our prior opinion in Peralta, the IJ noted that "the issuance of an OSC prior to IIRIRA's effective date cuts off the accrual of continuous presence or residence." As to Aguirre's equities-based argument, the IJ distinguished Aoun on its facts, ruling that Aguirre had not expressly argued that he failed to receive notice of his February 23, 1987, deportation hearing, or that the failure to receive notice was attributable to the government. Moreover, the IJ concluded that First Circuit case law was clear that the stop-time rule applied retroactively. Accordingly, because Aguirre had been personally served with an OSC five months after entering the United States, he could not establish the necessary years of physical presence, thereby rendering him ineligible for suspension.

Aguirre filed a notice of appeal to the Board of Immigration Appeals ("BIA"), challenging the IJ's ruling that "the Respondent was statutorily in[]eligible to apply for suspension of deportation."  The notice indicated that he would file a brief offering developed argument later, but the promised brief was never filed.  The BIA affirmed in a summary order, and Aguirre timely petitioned for our review.

## II.

Where, as here, the BIA summarily affirms the IJ's order without opinion, we review the IJ's order as the final agency determination.  See Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009).  Aguirre's petition focuses on pure questions of law, triggering de novo review.  Soeung v. Holder, 677 F.3d 484, 487 (1st Cir. 2012).

### A.  The Applicability of the Stop-Time Rule

Aguirre raises two arguments challenging the retroactive application of the stop-time rule to his case.  The first is based on the language of IIRIRA's transitional rules; the second is founded in the equities of his case.

#### 1.  The IIRIRA Transitional Rules

Aguirre first posits that IIRIRA's transitional rules make the stop-time rule retroactive only as to cases that were "in existence at the time the stop-time rule provision was enacted by IIRIRA, or made retroactive by the enactment of [NACARA]."  He then

-7-

cites the language of the IJ's 1987 administrative closure order, which directs "that the case be administratively closed and it is to be considered no longer pending before the immigration judge." (emphasis added). Because the IJ's order indicates that his proceedings were not "pending" as of IIRIRA's effective date, see Nolasco-Tofino, 22 I. & N. Dec. at 636, Aguirre says that the stop-time rule cannot apply retroactively to him.

This argument misapprehends the nature of administrative closure. As we have explained, administrative closure "is a procedural convenience . . ., but it does not constitute a final order." Lopez-Reyes v. Gonzales, 496 F.3d 20, 21 (1st Cir. 2007). The procedure "temporarily remove[s] a case from an Immigration Judge's active calendar or from the Board's docket" until the occurrence of "an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court and may not occur for a significant or undetermined period of time." In re Avetisyan, 25 I. & N. Dec. 688, 692 (BIA 2012); see also id. at 694 ("Administrative closure is a tool used to regulate proceedings, that is, to[ ]manage an Immigration Judge's calendar (or the Board's docket).").

Administrative closure does not terminate the proceedings or result in a final order of removal. Either the noncitizen or the government may move to recalendar the proceedings at any time, thus making administrative closure substantively "differ[ent] from

-8-

. . . a conclusion of the proceedings." Id. at 695. While an administratively closed case may be accurately characterized as "inactive," Aguirre's case remained on the IJ's docket and his proceedings reached no definitive end. See also Arca-Pineda v. Att'y Gen., 527 F.3d 101, 104-05 (3d Cir. 2008) (holding that stop-time rule applied to petitioner and rejecting contention that administrative closure "restarted" her accrual of physical presence because her "immigration proceedings did not end upon administrative closure, and instead . . . were merely removed from the IJ's calendar").

Consequently, notwithstanding the IJ's characterization, the administrative closure of Aguirre's proceedings did not alter their status as "pending" for the purposes of the IIRIRA transitional rules. This conclusion follows sensibly from the language of the transitional rules and the purpose and effect of an administrative closure order. We thus hold that the stop-time rule applies retroactively to Aguirre.[2]

---

[2] Aguirre also relies on the Ninth Circuit's opinion in Arrozal v. INS, 159 F.3d 429 (9th Cir. 1998), to support the contention that his proceedings were not "pending" as of IIRIRA's effective date. Arrozal held that proceedings were not "pending" for the purposes of the IIRIRA transitional rules when they had concluded at the agency level and resulted in "a final administrative decision before April 1, 1997." Id. at 434. Even assuming Arrozal was correctly decided, Aguirre's proceedings had not concluded when IIRIRA went into effect, thereby rendering that case inapposite.

## 2. The Equities of Aguirre's Case

Aguirre alternatively argues that the equities of his case should exempt him from the retroactive application of the stop-time rule, relying on Aoun, 342 F.3d at 508-09. There, the agency placed the petitioner into proceedings in August 1985, shortly before he accrued the requisite seven years of continuous physical presence. Id. at 509. After filing an initial application for suspension of deportation, he withdrew it based on misadvice of counsel. Id. at 504. He was found removable and ineligible for relief, after which he appealed to the BIA and requested a chance to reapply for suspension. Id. Largely through no fault of Aoun's, the BIA waited thirteen years before finally issuing an order denying Aoun's request. Id. His proceedings then concluded in 2000, after the stop-time rule had taken effect. Id.

The Sixth Circuit observed that if Aoun's BIA appeal had been resolved in a timely fashion and he had been given a chance to reapply for suspension, his application would have been governed by the physical presence rules of the pre-'96 regime and he would have retained his eligibility for suspension. Id. at 508. Charging the agency with "den[ying Aoun] the benefit of the earlier, more lenient rules concerning accrual of time towards continual physical presence in the United States," id. at 507, the court held that it would be "inequitable for the time stop rule to strip Aoun" of his eligibility for relief, id. at 509.

-10-

Aguirre contends that he merits a similar equitable exemption from the stop-time rule's effect. But he fails to address a more fundamental problem, which is that <u>Aoun</u> is irreconcilable with our prior holdings in <u>Peralta</u> and <u>Afful</u>. In those cases, we held that "the stop-time rule applies retroactively to orders to show cause issued prior to the enactment of the IIRIRA." <u>Afful</u>, 380 F.3d at 7; <u>see</u> <u>also</u> <u>Peralta</u>, 441 F.3d at 27-28. We see no reason to recognize a categorical exception to this rule of general applicability. <u>Aoun</u> cites only a single inapposite district court opinion in support of its outcome, <u>see</u> 342 F.3d at 509 (citing <u>Henry</u> v. <u>Ashcroft</u>, 175 F. Supp. 2d 688, 696 (S.D.N.Y. 2001) (addressing applicability of IIRIRA transitional rules to case that was not "pending" as of IIRIRA's effective date)), and does little to distinguish prior Sixth Circuit cases that had held, like us, that the stop-time rule applies retroactively to pre-'96 OSCs. <u>See Casillas-Figueroa</u> v. <u>Gonzales</u>, 419 F.3d 447, 449 (6th Cir. 2005) (refusing to follow <u>Aoun</u> and stating that it "contradicts earlier Sixth Circuit cases unambiguously establishing the stop-time rule's retroactivity"). Nor does <u>Aoun</u> square with settled principles of retroactivity jurisprudence, which typically demand fidelity to Congress's clear intent to make a statute retroactive. <u>See</u> <u>Landgraf</u> v. <u>USI Film Prods.</u>, 511 U.S. 244, 280 (1994) ("When a case implicates a federal statute enacted after the events in suit, the court's first task is

to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so . . . there is no need to resort to judicial default rules.").

In sum, we discern nothing in <u>Aoun</u> that warrants a departure from our own precedents, which clearly dictate that the stop-time rule applies retroactively to Aguirre.

B. **"Repapering**"

Aguirre also argues that he should receive a version of a procedure called "repapering," through which the government can restart a deportation/exclusion case pending as of IIRIRA's effective date by issuing a superseding charging document that reinitiates the case as a removal proceeding. <u>See</u> IIRIRA, § 309(c)(3) (authorizing government to "terminate proceedings in which there has not been a final administrative decision and to reinitiate proceedings under [IIRIRA]"). For the purposes of the stop-time rule, the restart of proceedings stops the clock as of the date of the superseding charging document, thereby rendering noncitizens "who would otherwise be ineligible for suspension of deportation relief by virtue of the stop-time rule, eligible for cancellation of removal" under the current version of the Immigration and Nationality Act. <u>Rojas-Reyes</u> v. <u>INS</u>, 235 F.3d 115, 125 (2d Cir. 2000).[3]

---

[3] Notably, Aguirre does not request the typical form of repapering. Repapering would mean that his case would be governed by the post-'96 version of the immigration statute, whereby Aguirre

-12-

This argument was not exhausted before the agency, however. The record shows that Aguirre never raised a repapering-based claim to the IJ, and never articulated one to the BIA. His failure to do so deprives us of jurisdiction to entertain this argument, and this part of his petition must be dismissed. See Telyatitskiy v. Holder, 628 F.3d 628, 631 (1st Cir. 2011); Lopez-Reyes, 496 F.3d at 22-23.

## III.

For the reasons stated, Aguirre's petition for review is denied in part, and dismissed in part for lack of jurisdiction.[4]

**So ordered.**

---

could apply for cancellation of removal for noncitizens without lawful permanent resident ("LPR") status. See 8 U.S.C. § 1229b(b)(1). But this version of cancellation requires the applicant to demonstrate, inter alia, hardship to a U.S. citizen or LPR relative of the applicant. Id. § 1229b(b)(1)(D). Aguirre has no familial ties that would suffice for this purpose.

Aguirre therefore wishes to retain his eligibility for suspension of deportation under the pre-'96 regime, which does not ask for a showing of hardship to a qualifying relative, but reset the clock on the commencement of his proceedings to 2005. This is not the version of repapering provided for in the IIRIRA transitional rules, and Aguirre offers no authority indicating that his requested relief is available under any version of the immigration statute.

[4] As a last resort, Aguirre requests that we ask the government whether it wishes to exercise prosecutorial discretion in his favor. We decline to do so.

-13-