# United States Court of Appeals
## For the First Circuit

No. 22-1599

DORA ALICIA MANCIA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Lynch, and Thompson,
<u>Circuit Judges</u>.

Margaret Moran, with whom New Hampshire Legal Assistance was on brief, for petitioner.
Robert Michael Stalzer, Trial Attorney, Office of Immigration Litigation, with whom Brian Boynton, Principal Deputy Attorney General, Civil Division, and Stephen J. Flynn, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

August 4, 2023

**KAYATTA**, <u>Circuit Judge</u>.  Dora Alicia Mancia's mother entered the United States without inspection in 1990 and sought asylum shortly thereafter.  In 1994, at the age of nine, Mancia entered the United States from El Salvador without inspection to join her mother.  Mancia was placed in deportation proceedings soon after her arrival.  In 1995 an Immigration Judge ("IJ") found her deportable and granted her a five-month period of voluntary departure, a decision Mancia appealed.  Her deportation proceedings ended in 1996, when the Board of Immigration Appeals dismissed Mancia's appeal from the entry of a voluntary departure order issued by the IJ.[1]  Mancia, then eleven years old, did not depart, voluntarily or otherwise.

In 1997, Congress enacted the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, §§ 201-04, 111 Stat. 2160, 2193-2201 (1997).  Two aspects of that statute are relevant here.  First, NACARA section 203 preserved for qualified individuals from El Salvador, among other nations, the more lenient substantive standards for relief from removal or deportation that had been available before the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).[2]  NACARA § 203; <u>Gonzalez-Ruano</u> v. <u>Holder</u>, 662 F.3d

---

[1] Mancia did not seek reopening of her deportation proceedings until 2021.

[2] Prior to the enactment of IIRIRA, noncitizens seeking suspension of deportation were required to show (among other

- 2 -

59, 60 (1st Cir. 2011). Second, section 203(c) of NACARA created a special and more lenient vehicle to reopen removal or deportation proceedings for NACARA-eligible individuals. The deadline for seeking reopening via a section 203(c) motion was September 11, 1998. 8 C.F.R. § 1003.43(e)(1). There is otherwise "no deadline for applying for relief under section 203 of NACARA." See Suspension of Deportation and Special Rule Cancellation of Removal for Certain Nationals of Guatemala, El Salvador, and Former Soviet Bloc Countries, 64 Fed. Reg. 27856, 27861 (May 21, 1999).

Mancia would like to have her removal proceedings reopened so that her request for suspension of deportation can be adjudicated according to the still-extant substantive NACARA standards. She acknowledges that the avenue to reopening provided by the special rule of section 203(c) has never been available to her, as she became NACARA-eligible after the section 203(c) motion filing deadline had passed. Hence, her motion did not cite section 203(c). Nor did she invoke its more lenient standards for

---

qualifications) seven years of continuous physical presence in the United States prior to seeking relief. See Aguirre v. Holder, 728 F.3d 48, 51 (1st Cir. 2013). IIRIRA, which dramatically restricted the availability of relief from deportation, imposed a "stop time" rule on the continuous physical presence requirement. Id. Under the "stop time" rule, noncitizens now must meet the continuous physical presence requirement before entering into deportation proceedings. See 8 U.S.C. § 1229b(d)(1); Aguirre, 728 F.3d at 51; Peralta v. Gonzales, 441 F.3d 23, 26–27 (1st Cir. 2006); Munoz v. Ashcroft, 339 F.3d 950, 955–56 (9th Cir. 2003); Ram v. I.N.S., 243 F.3d 510, 513 (9th Cir. 2001).

reopening. Instead, she asked the Board to exercise its well-established discretion to reopen her proceedings sua sponte so that her removability could then be determined by the Immigration Court based on the substantive NACARA standards for relief from removal which, she maintains, she satisfies. See 8 C.F.R. § 1003.2(a) ("[T]he Board may . . . reopen or reconsider any case in which it has rendered a decision . . . . The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section.")

The Board nevertheless ruled that it had no jurisdiction to reopen Mancia's proceeding because it construed Mancia's filing as a "motion[] seeking relief under NACARA," which therefore should have been "filed with the Immigration Court, even if the Board of Immigration Appeals issued an order in the case." In so ruling, the Board did not acknowledge its sua sponte reopening authority. Additionally, the Board stated that Mancia missed the September 11, 1998, deadline for "NACARA motions." Finally, the Board stated that Mancia was not eligible for substantive NACARA relief as of the September 1998 section 203(c) deadline, "given her noncompliance with the Immigration Judge's voluntary departure order."

- 4 -

The parties' principal dispute turns on the interaction, if any, between the Board's generally applicable power to reopen a closed removal proceeding sua sponte and the special motion to reopen created by section 203(c).  The government's principal argument, in substance, is that if the purpose of reopening is to pursue relief under NACARA's substantive provisions, then section 203(c) provides the exclusive avenue for reopening. Mancia rejects this position.  She contends that nothing in NACARA limits the Board's general discretionary power to reopen sua sponte a case in which it has rendered a decision.  Indeed, that inherent discretion is codified.  See 8 C.F.R. § 1003.2(a).  So, she reasons, even though the special and more petitioner-friendly reopening avenue of section 203(c) closed to her in 1998, there is no reason why she cannot ask the Board to grant reopening under its discretionary authority, subject to all the limits that otherwise apply to that authority.[3]

---

[3] The decision whether to exercise sua sponte reopening authority is highly discretionary, to the extent that "[t]he Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief."  8 C.F.R. § 1003.2(a). Consequently, the Board will only utilize this sua sponte authority "if it is 'persuaded that the respondent's situation is truly exceptional.'"  Thompson v. Barr, 959 F.3d 476, 480 (1st Cir. 2020) (quoting In re G-D-, 22 I. & N. Dec. 1132, 1134 (B.I.A. 1999)). Despite the substantial discretion inherent in the Board's sua sponte authority, we have jurisdiction to "review constitutional

We agree with Mancia. The Board's reliance on 8 C.F.R. § 1003.43(h) -- requiring filing of section 203(c) reopening requests with the Immigration Court -- is misplaced because that requirement only applies to "any motion to reopen filed pursuant to the special rules of section 309(g) of IIRIRA, as amended by section 203(c) of NACARA." See 8 C.F.R. § 1003.43(h)(1). Mancia's motion to reopen is no such motion. And nothing in NACARA requires those seeking relief under its provisions to do so by filing a section 203(c) motion.

The government points to no statute, rule, or precedent to the contrary. And we see no reason why NACARA should be read as implicitly divesting the Board of its discretion to sua sponte reopen a proceeding. The main purpose of NACARA was to make cancellation of removal and suspension of deportation more available to non-citizens like Mancia. See Gonzalez-Ruano, 662 F.3d at 60; Peralta v. Gonzales, 441 F.3d 23, 26-27 (1st Cir. 2006). Congress did this by adopting NACARA-specific standards for cancellation of removal and suspension of deportation, and by adding an easier reopening avenue for some persons. Given this context, it would make little sense to hold that Congress silently intended to eliminate other avenues to reopening for NACARA-

_____

claims or errors of law that arise in motions to reopen sua sponte." Id. at 483 (footnote omitted).

eligible persons who could not use the easier section 203(c) avenue.

## B.

The Board provided two brief alternative bases for its holding. The Board explained first that, even setting aside its lack of jurisdiction, the deadline for NACARA motions was September 11, 1998; and second, that Mancia had failed to show that she was eligible for NACARA relief as of that deadline, given her noncompliance with the Board's July 1996 voluntary departure order.[4] The voluntary departure order required Mancia to depart from the United States by August 28, 1996; she did not do so, and the five-year bar to relief -- including suspension of deportation -- under the then-existing provisions of the INA began to run as of that date and did not end until August 2001. See 8 U.S.C. § 1252b(e)(3)(A) (repealed).

As we explained above, although there was a September 11, 1998, deadline for NACARA section 203(c) motions, there is no deadline for NACARA relief. Thus, the passage of the section 203(c) deadline does not bar Mancia's motion for sua sponte

---

[4] Mancia challenges the validity of the departure order; because this issue is not administratively exhausted, we do not consider her arguments on that point here, and for the purposes of this analysis consider the departure order valid. In any event, Mancia applied for relief nineteen years after the August 28, 2001, end date of the then-applicable five-year bar.

- 7 -

reopening, as she did not seek to reopen pursuant to section 203(c).

Similarly, Mancia is not required to show that she was eligible for NACARA relief as of September 11, 1998. She acknowledges that she was not, due not only to the voluntary departure order but also, and more importantly, to the fact that her mother had not yet been granted NACARA relief. Mancia became eligible for NACARA relief based on her mother's 2006 grant of NACARA relief, as Mancia was then an unmarried dependent of her mother and had not yet turned twenty-one. See NACARA § 203(a)(1) (providing derivative eligibility to the unmarried son or daughter under twenty-one years of age at the time his or her parent is granted relief under NACARA). Thus, although the Board's consideration of whether to exercise its sua sponte authority to reopen Mancia's proceedings must assess whether Mancia's request for NACARA relief might be granted, it should ground that inquiry in whether Mancia is presently eligible for such relief. See Mahmood v. Holder, 570 F.3d 466, 469 (2d Cir. 2009) ("[W]here the Agency may have declined to exercise its sua sponte authority because it misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail, remand to the Agency for reconsideration in view of the correct law is appropriate.").

**II.**

For the foregoing reasons, we <u>grant</u> Mancia's petition by <u>vacating</u> the Board's rejection of her motion to reopen her removal proceedings pursuant to the Board's sua sponte authority and <u>remanding</u> for further consideration of that motion consistent with this opinion.